# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

DORA YULISSA LUCAS OCHOA,

Petitioner,

v.

WARDEN, ADELANTO ICE PROCESSING CENTER, et al.,

Respondents.

Case No. 5:26-cv-03342-MBK

ORDER GRANTING PETITION AND ISSUING A WRIT OF HABEAS CORPUS

Petitioner Dora Yulissa Lucas Ochoa, a native of Guatemala, is in the custody of the Department of Homeland Security ("DHS") at the Adelanto Detention Facility. Ms. Lucas fled to the United States in 2024, was briefly detained for about two months, and was released subject to conditions. She was recently re-detained by Immigration and Customs Enforcement ("ICE") on the alleged basis that she had not complied with the conditions of her release.

In this habeas action, Ms. Lucas challenges her re-detention under the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act. For the reasons that follow, the Court concludes that

Petitioner's re-detention—without any pre-deprivation process or a showing of a material change in circumstances justifying her detention—violates due process. Accordingly, the Court grants the Petition and issues a writ of habeas corpus requiring Petitioner's immediate release and preventing her re-detention absent a hearing where the Government must show changed circumstances justifying her re-detention.

## I.     FACTUAL AND PROCEDURAL HISTORY

Petitioner Dora Yulissa Lucas Ochoa is a native and citizen of Guatemala. On November 26, 2024, Petitioner entered the United States without inspection and was arrested by United States Border Patrol shortly thereafter. Dkt. 7 at 3. On January 14, 2025, Petitioner was served with a Notice to Appear ("NTA") placing her in removal proceedings. *Id.* The NTA charged Petitioner with removability pursuant to INA § 212(a)(6)(A)(i) (present without being admitted or paroled) and INA § 212(a)(7)(A)(i)(I) (not in possession of a valid, unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act). *Id.*

At some point shortly after her apprehension, immigration authorities released Petitioner from custody pursuant to 8 U.S.C. § 1226(a). Dkt. 1 at 9.[1] The release order required Petitioner to report as directed, appear for proceedings, comply with instructions, not change residences without permission, and comply with Alternatives to Detention ("ATD") or related supervision requirements. *Id.* at 9-10. Petitioner enrolled in the Intensive

---

[1] Although neither party directly addresses the authority for Petitioner's release, the parties agree that Petitioner is a member of the Bond Eligible Class in *Bautista v. Santacruz*, 813 F. Supp. 3d 1084 (C.D. Cal. 2025), *judgment entered sub nom. Maldonado Bautista v. Noem*, No. 5:25-CV- 01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). See Dkt. 1 at 4; Dkt. 7 at 2. Members of the Bautista class are subject to the detention authority of Section 1226(a). *Id.*

Supervision Appearance Program ("ISAP"), which required her to submit photos of herself through a phone application on a weekly basis and appear for monthly in-person check-ins with ICE. *Id.* at 10. Petitioner alleges that she missed a video call in December 2025 "due to connection problems" but otherwise complied with the terms of the ISAP and her release. *Id.* During her time on release, Ms. Lucas applied for asylum, appeared at proceedings in her immigration case, lived with her family, created community ties, and had no criminal arrests or convictions. *Id.*

On April 27, 2026, Petitioner was arrested by ICE officers when she appeared as instructed for her scheduled check-in. When she was detained, she was told it was because she missed a video call and other check-ins required by the ISAP. *Id.* at 11. Petitioner contested that she missed any appointments beside a December 2025 video, but ICE officers simply informed her she was "wrong." *Id.* at 10 n.1. Petitioner contends that she did not receive a pre-detention hearing and has not received any individualized custody determination since her re-detention. *Id.* at 11, 14.

Petitioner filed the instant Petition on June 16, 2026. Dkt. 1. She alleges that her re-detention violates procedural and substantive due process. *Id.* at 10-14. She also contends that her re-detention violates the Administrative Procedure Act. *Id.* at 15-16. She seeks immediate release from custody and an order enjoining Respondents from re-detaining her absent a custody hearing before a neutral arbiter in which the government bears the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community. *Id.* at 16. On June 17, 2026, the Court issued Notice of General Order 26-05 and Briefing Schedule. Dkt. 5.  The parties both consented to jurisdiction of the undersigned Magistrate Judge. Dkt. 3, 6.

Respondents filed their answer on June 24, 2026. Dkt. 7. Respondents

3

argue that Petitioner's re-detention is warranted because she committed six violations of the ISAP. *Id.* at 3-4. In support, Respondents attach a Form I-213 indicating that Petitioner missed five biometric check-ins between July 2025 and January 2026 and missed a virtual home visit in December 2025. Dkt. 7-1 at 3. Respondents also contend that, even if Petitioner can demonstrate her release was improperly revoked, immediate release from custody is not the appropriate remedy. Dkt. 7 at 4-5.

Petitioner filed her reply on June 29, 2026. Dkt. 8. Petitioner contends that nothing in Respondents' submission demonstrates that she is a danger to the community, a flight risk, or any other sort of "changed circumstances" that could justify her re-detention or addressed her liberty interest in being free from detention. *Id.*

## II.   DISCUSSION

Petitioner argues that her ongoing detention violates procedural due process, substantive due process, and the APA.

Before turning to the substance of Petitioner's claims, the Court observes that Respondents have not meaningfully responded to the arguments in the Petition. In the argument section of their Answer, Respondents contend that they had the authority to re-detain Petitioner under 8 U.S.C. § 1231(a)(6) and the statute's implementing regulations, 8 CFR § 241.1(l)(1), and 8 CFR § 241.4(l)(2). Dkt. 7 at 3-4. But Section 1231(a)(6) applies to noncitizens with final orders of removal. As Respondents acknowledge elsewhere in their brief, Petitioner has no final order of removal and is in active removal proceedings, (*id.* at 2), and as such, is detained pursuant to the authority of Section 1226(a). *See* supra n.1. Respondents' arguments concerning the sufficiency of

4

the revocation procedures under Section 1231(a)(6), (Dkt. 7 at 3-5), are therefore wholly inapposite.

Respondents do not address Petitioner's argument that her re-detention under Section 1226(a), for which she received no pre-deprivation process, violates procedural and substantive due process. Respondents' failure to contest Petitioner's claim is a concession. *See Singh v. Warden Desert View Annex, et al.*, No. 26-cv-00440-FMO-AJR, Dkt. 9 (C.D. Cal. Feb. 9, 2026) (granting petition where "the court construes respondents' failure to address petitioner's due process claim as a concession of petitioner's argument"); *Soleimani v. Larose*, No. 25-cv-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting petition because, "[b]y failing to respond to the claims actually asserted, Respondents have conceded the claims"). *See also N-E-M-B v. Wamsley*, No. 3:25-cv-989-SI, 2025 WL 3527111, at *1 (D. Or. Dec. 9, 2025) ("Respondents do not challenge any aspect of the Petition on the merits and thus the Court finds that Respondents have waived such challenges and conceded those aspects of the Petition.").

Based on the arguments presented, the Court finds that Petitioner is entitled to habeas relief. Consistent with numerous recent decisions in this District, the Court concludes that Petitioner's sudden re-detention—without notice or a hearing—violates procedural due process. The Court also concludes that Petitioner's re-detention violates substantive due process because Respondents have not shown any material change in circumstances justifying her re-detention.

## A. Petitioner's Re-Detention Without Notice or an Opportunity to be Heard Violates Due Process

The Court begins by addressing Petitioner's claim that her re-detention violates procedural due process. A "two-step analysis" applies to procedural

due process claims. *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). First, the Court must determine if Petitioner was deprived of a constitutionally protected interest. *Id.* Second, if such an interest exists, the Court then considers "whether that deprivation was accompanied by sufficient procedural protections." *Id.* To evaluate the adequacy of procedural protections, the Court applies the familiar *Mathews v. Eldridge* framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. 424 U.S. 319, 335 (1976).

### 1. Petitioner has a Constitutionally Protected Liberty Interest

"It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (internal quotation marks omitted). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process . . . ." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).

Petitioner therefore has a constitutionally protected interest in freedom from incarceration. In addition, Petitioner has been living at large in the United States for the past sixteen months pursuant to her release order, during which time she has developed significant ties in the United States. As discussed more fully below, Petitioner has a significant liberty interest in maintaining her settled life with her family outside of custody.

Respondents do not dispute that Petitioner has constitutionally protected liberty interest in remaining free from confinement. As such, the

6

Court concludes that Respondents deprived Petitioner of a constitutionally protected liberty interest when they re-detained her.

### 2. *Mathews* Balancing Test

Because Respondents deprived Petitioner of a protected liberty interest, the Court considers "whether that deprivation was accompanied by sufficient procedural protections." *Johnson*, 55 F.4th at 1179.

### a. Private Interest

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in maintaining her life out of custody. Petitioner has lived in the United States for approximately nearly two years, during which time she developed ties with her family and community.

While Petitioner has remained subject to supervision during this time, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). Petitioner's release included "an implicit promise that parole will be revoked only if [s]he fails to live up to the parole conditions." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). This conditional liberty is "'valuable and must be seen as within the protection of the Fourteenth Amendment.'" *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

While Petitioner has only resided in the United States for nearly two years, a person can develop meaningful ties in such a relatively short period of

7

time. Even if Petitioner has "a lesser liberty interest" "at the margin" than other noncitizens released pending removal proceedings,  "the same important interest is at stake—freedom from prolonged detention" and the potential loss of the important ties that Petitioner has developed in the United States. *Diouf v. Napolitano*, 634 F.3d 1081, 1086-87 (9th Cir. 2011), *overruled on other grounds by Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022).

For these reasons, numerous courts in this District and throughout the country—including the undersigned Magistrate Judge—have found noncitizens paroled into the United States, or released on conditional parole shortly after their entry into the United States, for comparable periods have a significant liberty interest in maintaining their freedom from confinement. *See Lugos v. Mullin,* No. 5:26-cv-01880-KES, 2026 WL 1250264, at *5 (C.D. Cal. May 1, 2026) ("nearly two years"); *Medrano-Rocha v. Santacruz*, No. 2:26-cv-00404-KK-SSC, 2026 WL 411355, at *3 (C.D. Cal. Jan. 23, 2026) ("nearly three years"); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *4 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) ("approximately three years"). *See also Torres*, 2026 WL 145715, at *5 ("This Court joins many others in finding that humanitarian parole can establish the same kinds of liberty interests described in *Morrissey*.") (collecting cases); *G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1108–10 (E.D. Cal. 2025) (same).

### b. Risk of Erroneous Deprivation

With respect to the second *Mathews* factor, the Court finds that "[t]here is an unacceptably high risk that the government would erroneously deprive—or already has erroneously deprived—Petitioner of her liberty interest absent a pre-detention hearing." *Cruz v. Lyons*, No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025). The "primary" purpose of

8

immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. *Zadvydas*, 533 U.S. at 699. But Petitioner has not been afforded any process to determine whether her detention in fact advances either purpose.

The record suggests that Petitioner is not a flight risk or danger. Petitioner's initial release from custody, "at least implicitly," "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Sun v. Santacruz*, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). Petitioner was released on his own recognizance pursuant to Section 1226(a). Petitioner's release reflects the Government's determination that Petitioner did not present a sufficient danger or flight risk requiring his detention. *See* 8 C.F.R. § 236.1(c)(8) (providing that the Government may release a noncitizen under Section 1226 "provided that the alien [] demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding").

As discussed more fully in Section II.C. below, Respondents have not shown any material change in circumstances to suggest that Petitioner's initial release order was in error. Petitioner has maintained a stable residence, has no criminal history, has proceeded with her immigration case, and largely complied with her supervision conditions during her time in the United States. Based on this record, the Court concludes that there is a high risk that the lack of pre-deprivation process—that is, a hearing to determine

whether Petitioner in fact presents a danger or flight risk—has resulted in Petitioner's unnecessary detention.

### c. Government Interest

As to the third *Mathews* factor, "as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." *Cruz*, 2025 WL 4051129 at *4 (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" *Sun*, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine . . . ." *Singh v. Andrews*, No. 1:25-cv-00801-KES-SKO, 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025).

\* \* \*

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Government's lack of constitutionally-adequate procedures has resulted in Petitioner's unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore concludes that the Government's re-detention

of Petitioner without adequate pre-deprivation process—namely, notice and a hearing—violated due process.

### 3. Post-Deprivation Process Would not Remedy Petitioner's Unlawful Re-Detention

Respondents argue that, even if Petitioner's due process rights were violated, the appropriate remedy for any such procedural deficiency would not be automatic release from custody, but rather, a post-deprivation bond hearing. Dkt. 7 at 2, 4-5.

Most courts to address the issue have "concluded that a post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing." *Nurlan Gudavasov v. David Marin*, No. 5:26-cv-00541-AH-MBK, 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026) (collecting cases). These decisions reason that a post-deprivation hearing "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *Khalsa v. Janecka, et al.*, No. 5:26-cv-00623-CAS-AGR, 2026 WL 486670, at *7 (C.D. Cal. Feb. 19, 2026) (quoting *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025)). *See also Mendoza v. Adelanto ICE Processing Center Warden*, No. 5:26-cv-02144-KES, 2026 WL 1480247, at *4 (C.D. Cal. May 22, 2026) ("allowing the government to 'cure' such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless"); *Hector Jose Martinez Lopez v. Dep't of Homeland Sec. et al.*, No. 25-cv-03607-KK-ADS, 2026 WL 1365980, at *7 (C.D. Cal. Apr. 23, 2026) ("a post-detention bond hearing would offer little more than cold comfort to Petitioner, whose erroneous deprivation

of liberty, along with the concomitant damage to his mental health and impact on his family, has already taken place") (cleaned up).

The Court agrees that a post-deprivation bond hearing is not a sufficient remedy for the due process violation at issue. A person who has suffered a constitutional violation should ordinarily be returned "to the status quo, or 'the last uncontested status which preceded the pending controversy.'" *V.K. v. Noem*, No. 5:26-CV-00241-MWC-SK, 2026 WL 246023, at *5 (C.D. Cal. Jan. 25, 2026) (quoting *Hoac v. Becerra,* No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2026)); *Chowdhury v. Lyons*, No. 5:26-cv-01252-MEMF-E, 2026 WL 1045562, at *7 (C.D. Cal. Apr. 13, 2026) ("prompt release is the remedy that will best return Petitioner to the status quo and restore his position as it was prior to the detention that Petitioner contends was in violation of his constitutional and statutory protections"). As the Second Circuit has explained, "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error." *United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (cleaned up). This principle has particular force where, as here, the constitutional protections are intended to prevent an unlawful detention in the first place.

*See United States v. Morrison*, 449 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered").

As such, the Court finds that the appropriate remedy for the Government's unlawful re-detention of Petitioner is her release.

**B. Petitioner's Re-Detention Violates Substantive Due Process**

Petitioner also argues that her ongoing confinement violates substantive due process principles because it is excessive in relation to any legitimate governmental purpose. Dkt. 1 at 11.

**1. The Government May Only Re-Detain a Noncitizen Where There Has Been A Material Change in Circumstances**

Due process requires that immigration detention bear a "'reasonable relation'" to a non-punitive purpose. *Zadvydas*, 533 U.S. at 690 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). The Supreme Court has recognized only two permissible non-punitive purposes for detention under the immigration laws: ensuring a noncitizen's appearance at removal proceedings or removal, and preventing danger to the community. *Id*. at 690-92.

Section 1226(a), and its implementing regulations, establish procedures to ensure that the Government only detains noncitizens where it advances these purposes. The statute provides that the Government "may" detain a noncitizen "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). When a person is apprehended under Section 1226(a), ICE officers conduct an initial custody determination to decide whether to release or detain the person. 8 C.F.R. § 1236.1(c)(8). Under the regulations, the ICE officer must release the noncitizen if they "demonstrate to the satisfaction of the officer that such release would not pose

13

a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.*

After the initial custody determination, the noncitizen may request that an IJ review the determination at a bond hearing in immigration court. *See* 8 C.F.R. §§ 1236.1(d)(1), 1003.19. "If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the IJ will order his release." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).

For individuals like Petitioner who were released under authority of Section 1226, the statute provides that the Government "at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b). However, the BIA has recognized a limitation on the Government's authority to re-detain, indicating that "no change should be made by [DHS] absent a change of circumstance." *Matter of Sugay*, 17 I&N Dec. 637, 640 (BIA 1981). "DHS has incorporated this holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1196-97 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). The Government has represented that, pursuant to this practice, "DHS generally only re-arrests an alien pursuant to § 1226(b) after a material change in circumstances." *Id.* (quoting Government brief). *See also Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021) (citing *Matter of Sugay* and recognizing that "absent changed circumstances, such as reinvolvement with

14

the criminal justice system, ICE cannot redetain Panosyan") (internal citations and quotations omitted).

While this rule was adopted as a matter of agency practice, its grounding is constitutional. Where the Government previously determined that a noncitizen's detention is not necessary, it follows that re-detention is only justified if there has been some change in circumstances demonstrating that the noncitizen now presents a risk of danger or flight requiring detention. The rule ensures that detention bears a "reasonable relation" to a legitimate purpose and protects against an arbitrary deprivation of a noncitizen's liberty. *See Zadvydas*, 533 U.S. at 690. *See also Safi v. Noem*, No. 2:26-CV-00308-TLF, 2026 WL 445564, at *3 (W.D. Wash. Feb. 17, 2026) ("This standard prevented arbitrary revocations and ensured that detention decisions rested on individualized assessments of changed circumstances rather than categorical assumptions.").

For this reason, numerous courts have recognized that due process requires that the Government may only re-detain a noncitizen based on a material change in circumstances. *Id.*; *Qazi v. Albarran*, 2025 No. 2:25-cv-02791-TLN-SCR, 2025 WL 2769837, at *3 (E.D. Cal. Sept. 29, 2025) ("Petitioner was previously released pursuant to a finding that he was not at risk of fleeing or harming others, and as such, due process prevents him from being redetained except upon a showing of a material change in circumstances."); *Yan Lu v. Los Angeles Field Dir., et al.*, No. 5:26-CV-575-JAK-SP, 2026 WL 1455317, at *3 (C.D. Cal. May 7, 2026) (same); *Lesic v. LaRose*, No. 25-cv-2746-LL-BJW, 2025 WL 3158675, at *2 (S.D. Cal. Nov. 12, 2025) (same); *Rios v. Noem*, No. 25-CV-2866-JES-VET, 2025 WL 3141207, at

15

*2 (S.D. Cal. Nov. 10, 2025) (same); *Meza v. Bonnar*, No. 18-cv-02708-BLF, 2018 WL 2554572, at *3 (N.D. Cal. June 4, 2018) (same).

### 2. Respondents Have not Shown a Material Change in Circumstances Warranting Petitioner's Re-Detention

Respondents do not dispute that they could only lawfully re-detain Petitioner based on a material change in circumstances. However, they argue that Petitioner "was arrested by ERO pursuant to having several ISAP violations" and that "[a]s such, she fails to establish any deficiency in the release revocation procedure if one were required." Dkt. 7 at 4. In support of their contention, Respondents attached a Form I-213 showing the dates and types of violations. Petitioner argues that, even if the alleged violations are accepted as true, they do not show that Petitioner is an unmanageable risk of danger or flight. Dkt. 8 at 2-3.

The Court agrees that Respondents have not shown that the alleged violations, standing alone, constitute materially changed circumstances justifying Petitioner's detention. Petitioner states—and Respondents do not dispute—that Petitioner has maintained a stable residence and largely complied with her release conditions following her release from custody and placement in ICE's ATD program. Petitioner resides with her family, has appeared for all her immigration hearings, and has no criminal history during her time in the United States. Petitioner admits that she missed the December 2025 video call due to technical difficulties, but she immediately attempted to cure the violation by following up with ICE. Since that time, Petitioner has continued to appear for her in-person and video check-ins, including for the check-in at which she was re-detained by ICE. There is therefore no indication that Petitioner was attempting to evade her supervision requirements or flee from immigration authorities. *See Fernando*

16

*A.G. v. Chestnut*, No. 1:25-CV-01925-SKO, 2026 WL 74007, at \*6 n.6 (E.D. Cal. Jan. 9, 2026) (finding it significant that the petitioner "was arrested in the context of complying with an order to check in on December 3, 2025" after alleged ISAP violations); *Singh v. Warden of Golden State Annex*, No. 1:26-cv-01406-KES-HBK, 2026 WL 1108233, at \*1 (E.D. Cal. Apr. 23, 2026) (same).

Petitioner disputes Respondents' allegation that she failed to timely upload her photograph on several other occasions. But even assuming such violations occurred, Respondents do not explain why such technical violations indicate that Petitioner is a flight risk or incapable of complying with her supervision conditions. As Petitioner observes, Respondents' supervision program handbook directs that ICE should escalate supervision conditions in the event that a noncitizen's conduct or other circumstances (such as an imminent removal) indicate a heightened risk of flight. Dkt 8 at 2 (citing ICE ATD Handbook: Intensive Supervision Appearance Program (Aug. 16, 2017). But there is no evidence that ICE escalated Petitioner's supervision conditions or otherwise indicated that any of the alleged violations put her at risk of re-detention. The record therefore indicates that the Government did not view

Petitioner's conduct as sufficiently serious to warrant increased monitoring, much less requiring her detention.

As such, the Court concludes that Respondents have not shown any material change in circumstances to justify Petitioner's re-detention and that her ongoing confinement violates substantive due process.

**C. Petitioner's Remaining Argument**

The Court declines to address Petitioner's Administrative Procedure Act claim. Nothing prevents Petitioner from raising this claims in the future, should she be re-detained.

## III.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner Dora Yulissa Lucas Ochoa's (A# 221-350-225) immediate release, subject to appropriate conditions; and (3) Respondents shall file a status report no later than three (3) days from the date of this Order confirming that Petitioner has been released from Respondents' custody consistent with this order.

Dated: July 1, 2026

_____
HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE

18